**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CASE NO. 5:07-cv-00084-R**

**KRIS WILLIAM DENSON**                                                                **PLAINTIFF**

**v.**

**INGRAM BARGE COMPANY**                                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 14).

Plaintiff has responded (DN 16), and Defendant has replied (DN 17). This matter is now ripe for

adjudication. For the reasons that follow, Defendant's Motion is GRANTED IN PART and

DENIED IN PART.

BACKGROUND

This matter arises out of an injury suffered by Plaintiff Kris William Denson on or about

March 21, 2006, while working on one of Defendant Ingram Barge Company's ("Ingram")

vessels. For the purposes of summary judgment, the following facts are undisputed. While

employed for Ingram from February 2006 through September 2006, Denson worked primarily in

Ingram's barge fleet at its Grand Rivers Terminal on the Tennessee River. The barge fleet

consisted of two crane barges, a reclaim barge and several other barges. The crane barges are

anchored to the river bottom by a spud, which is a metal beam that is placed by means of a crane

through a cylinder called a spud well and impeded in the river bottom. The spud is raised by the

crane when the barge is to be moved.

The two crane barges, reclaim barge, and other barges are all tied to each other by lines.

Empty coal barges are brought by tugboat to the fleet to have residual coal removed and for

cleaning. A clam shell bucket on the crane is used to remove the residual coal from the coal

barges to the reclaim barge.  A front-end loader is then lowered into the coal barge by the crane, and this is used to move the remaining coal into a portion of the barge to be removed by crane. The bottom of the barge is then cleaned.

Denson's duties consisted essentially of cleaning coal from the tops of the barge combing (known as caps) and the barges' outer walkways (known as gunnels), operating the front-end loader inside the barge, and cleaning out the barge bottom.  He normally worked from seven o'clock in the morning until five o'clock in the evening.  Each morning Denson was assigned to one of the two crane barges and taken from the dock to the fleet by boat.  The boat ride was about five to ten minutes.  With the exception of fifteen or twenty minutes spent on the dock when he first reported to work in the morning, thirty minutes taking lunch on the dock, and the occasions when he worked shoreside cleaning the office, his time was spent working on barges in the fleet.

On March 21, 2006, as Denson was walking to the stern of the barge he placed his right hand on the outside of the spud well in order to keep himself from falling.  When the barge shifted, Denson's hand was crushed between the barge and the spud well.  Denson suffered severe injuries, including amputation of a finger.

Denson brought this action pursuant to the Jones Act, 46 U.S.C. § 30104.  In the alternative, Denson also alleges a claim pursuant to § 905(b) of the Longshore and Harborworkers Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA").  Ingram argues that Denson cannot recover under the Jones Act because he was not a seaman.  Ingram also argues that Denson cannot recover under § 905(b) of the LHWCA.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### A.      *Jones Act Claim*

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46

U.S.C. § 30104.  The Jones Act and the LHWCA, which applies to land-based maritime workers, are mutually exclusive.  Therefore, Denson's Jones Act claim turns on whether he was a seaman.

The question of who is a "seaman" is a mixed question of law and fact.  *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).  When the facts and law are undisputed, "the issue is whether the facts meet the statutory standard."  *Id.*  If reasonable persons, applying the proper legal standard, could differ as to whether Denson was a "seaman," it is a question for the jury.  *See id.*  But, "summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion."  *Id.*

In *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), the Supreme Court held that the two essential requirements for seaman status are (1) that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission,'" and (2) that the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  *Id.* at 368 (citations omitted).  The Court explained that "[t]he fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."  *Id.*

Ingram does not dispute that Denson's duties contributed to the function of its vessels, that Denson had a connection to an identifiable fleet of its vessels, or that Denson's connection to the vessels was substantial in duration.  Ingram's only argument is that Denson was not a seaman because his connection to the fleet of vessels was not substantial in nature since his

duties did not expose him to the perils of the sea.  In response, Denson states that he faced

hazards such as (1) the dangers associated with the movement of the vessels in the water as a

result of the movement of the water generally and from wind; (2) trip-and-fall hazards associated

with walking on the decks of the barges due to the presence of deck fittings, ratchets, and

rigging, and slip hazzards caused by inclement weather; (3) hazards of falls overboard while

exposed to the river; (4) dangers of walking from barge to barge in the fleet; and (5) dangers of

injury while handling lines.  Ingram does not dispute that Denson faced these hazards, instead it

states that these hazards are those faced by longshoreman who load and unload barges at docks

every day, not special maritime hazards or disadvantages that seamen face.

The Court finds that Denson was not a seaman because his duties did not expose him to

the perils of the sea.  "The Jones Act remedy is reserved for sea-based maritime employees

whose work regularly exposes them to 'the special hazards and disadvantages to which they who

go down to sea in ships are subjected.'"  *Chandris*, 515 U.S. at 370 (citation omitted).  Denson

was not subjected to the special hazards and disadvantages to which seaman are subjected.  *See*

*Lara v. Arctic King Ltd.*, 178 F. Supp.2d 1178, 1182 (W.D. Wash. 2001) (special hazards and

disadvantages of being a seaman include the need to fight fires without outside assistance, the

need to abandon ship, the need to survive exposure to the elements until help arrives, potential

delay or inconvenience in being transported to medical attention for injuries, and being stuck on

a vessel under the control of its Master and operator for extended periods until the next port

call).  The hazards Denson states he faced do not rise to the level of the special hazards and

disadvantages faced by seaman; they are hazards that longshoremen commonly encounter.

Therefore, Denson was an intended beneficiary of the LHWCA.

B.      *LHWCA Claim*

In the alternative, Denson claims that Ingram violated the LHWCA, 33 U.S.C. § 905(b),[1]

by negligently (1) failing to provide him with a safe place to work, (2) failing to provide an

adequate housing around the spud well, and (3) failing to adequately secure the vessel.  Ingram

argues that these claims fail because they are claims for unseaworthiness, which is barred by

§ 905(b) of the LHWCA.  Ingram also argues that Denson's claims that Ingram did not provide a

safe place to work or adequately secure the vessel fail because Ingram cannot be held liable for

injuries caused by its role as an employer.  In response, Denson does not dispute that a

seaworthiness claim is barred by the statute, or that dual capacity vessel owners can only be held

liable for negligence in their capacity as vessel owners.  Instead, Denson states that any

negligence in not properly securing the barge was vessel negligence, and that the alleged

negligence relates to Ingram in its capacity as vessel owner and not as employer.

The Court finds that summary judgment on this issue at this time would be premature.

The arguments of both parties are undeveloped and conclusory.  Ingram essentially argues that

Denson failed to state a proper claim under the LHWCA.  Under this standard, the Court finds

---

[1] Section 905(b) provides:
> In the event of injury to a person covered under this chapter caused by the
> negligence of a vessel, then such person, or anyone otherwise entitled to
> recover damages by reason thereof, may bring an action against such vessel
> as a third party in accordance with the provisions of section 933 of this title,
> and the employer shall not be liable to the vessel for such damages directly
> or indirectly and any agreements or warranties to the contrary shall be void.
> . . . The liability of the vessel under this subsection shall not be based upon
> the warranty of seaworthiness or a breach thereof at the time the injury
> occurred. The remedy provided in this subsection shall be exclusive of all
> other remedies against the vessel except remedies available under this
> chapter.

.

that Denson has stated a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Based on the briefs submitted, the Court cannot make a further determination of whether Ingram is entitled to judgment as a matter of law.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Plaintiff may proceed with his alternative LHWCA claim.