UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-00084

**KRIS WILLIAM DENSON**                                                                                           **PLAINTIFF**

v.

**INGRAM BARGE COMPANY**                                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 21). Plaintiff has responded (DN 22), and Defendant has replied (DN 23). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

This matter arises out of an injury suffered by Plaintiff Kris William Denson on or about March 21, 2006, while working on one of Defendant Ingram Barge Company's ("Ingram") vessels. For the purposes of summary judgment, the following facts are undisputed. While employed for Ingram from February 2006 through September 2006, Denson worked primarily in Ingram's barge fleet at its Grand Rivers Terminal on the Tennessee River. The barge fleet consisted of two crane barges, a reclaim barge and several other barges. The crane barges are anchored to the river bottom by a spud, which is a metal beam that is placed by means of a crane through a cylinder called a spud well and impeded in the river bottom. The spud is raised by the crane when the barge is to be moved.

The two crane barges, reclaim barge, and other barges are all tied to each other by lines. Empty coal barges are brought by tugboat to the fleet to have residual coal removed and for cleaning. A clam shell bucket on the crane is used to remove the residual coal from the coal

barges to the reclaim barge. A front-end loader is then lowered into the coal barge by the crane, and this is used to move the remaining coal into a portion of the barge to be removed by crane. The bottom of the barge is then cleaned.

On March 21, 2006, Denson was walking outboard on the starboard outside stern end of the crane barge with tools in his left outboard hand. While he was walking by the spud well, the barge shifted due to the movement of the water. In order to steady himself and keep from falling overboard into the river, Denson placed his right hand on the outside of the spud well, but inadvertently two of the fingers on his right hand went into a gap between the spud and the spud well. When the barge shifted again, the gap closed, crushing Denson's fingers. Denson suffered severe injuries, including amputation of a finger.

Denson brought this action pursuant to the Jones Act, 46 U.S.C. § 30104. In the alternative, Denson alleged a claim pursuant to § 905(b) of the Longshore and Harborworkers Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA"). On April 15, 2009, this Court ruled that Denson is not a seaman. Therefore, his only remaining claim against Ingram is for negligence under § 905(b) of the LHWCA.

In his Complaint, Denson alleges that Ingram may be liable under § 905(b) for negligently failing to provide him with a safe place to work, negligently failing to provide an adequate safety housing around the spud well, and negligently failing to adequately secure the vessel. Ingram argues that it is entitled to summary judgment because these are allegations of unseaworthiness, which is barred by the LHWCA, and employer negligence, for which Ingram cannot be liable under the LHWCA. Denson argues that Ingram can be liable as a result of its negligence as a vessel owner.

2

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**DISCUSSION**

An injured longshoreman may maintain a negligence action against a vessel owner pursuant to § 905(b) of the LHWCA. 33 U.S.C. § 905(b) ("In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone

otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party . . . ."). In *Scindia Steam Navigaton Co. v. De Los Santos*, the Supreme Court established three duties a shipowner owes a longshoreman when it relinquishes control of the vessel to a stevedoring company. 451 U.S. 156, 167-78 (1981). The Sixth Circuit has held that these duties are "neither heightened nor diminished when the longshoreman is employed directly by the vessel," as is the case here. *Dietlin v. U.S. Steel Corp.*, No. 84-1589, 1985 WL 13799, at *2 (6th Cir. Oct. 18, 1985).

In support of his claim of negligence, Denson cites the first of the *Scindia* duties, known as the "turnover" duty. This duty states that a vessel owner must exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." *Scindia*, 451 U.S. at 167. As part of this duty, the vessel owner must also "warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care." *Id.* Ingram, however, argues that the Court need not analyze whether it has breached its turnover duty because Denson only alleges claims of unseaworthiness and employer negligence, and therefore does not assert a proper § 905(b) claim.

First, Ingram contends that Denson's claim that Ingram was negligent by not providing him with a safe place in which to work must fail because providing a safe place to work is a duty of a longshoreman's employer, not the vessel owner, and as such is not recoverable under § 905(b). Section 941 of the LHWCA places the duty to provide a safe place to work on the employer: "[e]very employer shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees . . . ." 33 U.S.C. § 905(b); *see also Howlett v.*

4

*Birkdale Shipping Co.*, 512 U.S. 92, 101 (1994) (explaining that the stevedore's obligation "to provide a 'reasonably safe' place to work and to take safeguards necessary to avoid injuries" may not be transferred to the vessel owner); *Levene v. Pintail Enters., Inc.*, 943 F.2d 528 (5th Cir. 1991) (finding allegations that dual capacity vessel owner did not provide plaintiff with "a safe place to work" were best characterized as acts of the employer, and therefore it was immune from suit for these acts). Denson does not address this argument in his response, nor does he even mention the underlying allegation that Ingram failed to provide him with a safe place to work. Because Denson's allegation that "the Defendant failed to provide Plaintiff with a safe place in which to work" falls within Ingram's role as his employer, the Court finds that it cannot serve as a basis for Denson to recover under § 905(b).

Second, Ingram argues that Denson's claims that "the Defendant failed to provide an adequate safety housing around the spud well thereby creating a risk of injury to the Plaintiff" and that "the Defendant failed to adequately secure the vessel creating a risk of injury to the Plaintiff" are design defect claims, which also may not serve as a basis for recovery under § 905(b) because they are disguised claims of unseaworthiness. *See Bilderbeck v. World Wide Shipping Agency*, 776 F.2d 817, 819 (9th Cir. 1985) (finding longshoreman's generalized design defect claims were disguised claims of unseaworthiness, and not specific allegations of negligence); *see also* 33 U.S.C. 905(b) ("The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."). Denson does not directly address whether these claims are actually design defect claims.

The Court finds that Denson's allegations with regards to providing an adequate safety

5

housing and securing the vessel could possibly, but not necessarily, be construed as design defect claims. Unlike the allegations in *Bilderbeck*, for example, Denson does not use terms such as "negligent design." *See* 776 F.2d at 818; Pl. Compl. ¶ 8. Therefore, to the extent that Denson's allegations are claims for defective design and setup of the vessel, they are disguised claims of unseaworthiness and not recoverable under § 905(b). To the extent, however, that they may be understood as claims that Ingram breached its turnover duty, the Court will conduct a *Scindia* analysis.

The question thus becomes whether Denson has presented a genuine issue as to whether Ingram failed to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." *Scindia*, 451 U.S. at 167.[1] In his response, Denson implies that there is a genuine issue as to whether the spud well posed a hidden danger and whether Denson was exercising reasonable care when he placed his hand on the spud well. Denson asserts that it was not unreasonable for him to place his hand on the outside of the spud well to steady himself, and that his fingers went into the gap between the spud and spud well inadvertently.

Ingram argues that the danger caused by placing a hand on a spud well is an open and obvious one, and that the vessel was in a condition such that an expert and experienced

---

[1] Denson argues that Ingram's Motion for Summary Judgment should be construed as a Rule 12(b)(6) motion to dismiss. Aside from the fact that a 12(b)(6) motion "must be made before pleading," Fed. R. Civ. P. 12(b), and because matters outside the pleadings have been presented "the motion must be treated as one for summary judgment," Fed. R. Civ. P. 12(d), Ingram "may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim," Fed. R. Civ. P. 56(b). The Court will treat Ingram's motion as one for summary judgment.

6

longshoreman, mindful of the dangers he should reasonably expect to encounter, could safely perform his work. Ingram points to *Stevens v. Kiva Constr. & Eng'g, Inc.*, in which the seaman plaintiff suffered a nearly identical injury by placing his hand on the edge of the spud well in order to steady himself and inadvertently crushing his fingers. No. 92-2412, 1993 WL 386318, at *1 (E.D. La. Sept. 16, 1993). Finding that the plaintiff failed to bear his burden of proof, the court reasoned that "the spud well was not intended to be a hand rest," and that it is not reasonable to assume it would be "safe to place a hand in it." *Id.*

The Court finds that Denson has not presented evidence on which the trier of fact could reasonably find in his favor. He has not shown that the hazard presented by the spud well was hidden, or that the it was such "that an expert and experienced stevedore would not 'be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property.'" *Bjaranson v. Botelho Shipping Corp.*, 873 F.2d 1204, 1208 (9th Cir. 1989) (quoting *Scindia*, 451 U.S. at 167). However, Denson states that there has been virtually no discovery conducted by the parties on the issue of negligence, nor have any liability experts been retained. While Denson makes this comment in a footnote rather than by affidavit pursuant to Rule 56(f), the Court will deny summary judgment at this time to allow for discovery on the issue of whether Ingram violated its turnover duty.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (DN 21) is GRANTED IN PART and DENIED IN PART. Denson's allegation that "the Defendant failed to provide Plaintiff with a safe place in which to work" cannot serve as a basis for Denson to recover under § 905(b), but he may conduct discovery on

whether Ingram violated its turnover duty by failing to "provide an adequate safety housing around the spud well thereby creating a risk of injury to the Plaintiff" and "adequately secure the vessel creating a risk of injury to the Plaintiff."

IT IS FURTHER ORDERED that a telephonic conference is set for August 12, 2009, at 9:00 a.m. CST.  The Court will place the call.